**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-22822-ALTMAN/Hernandez**

**KONINKLIJKE PHILIPS N.V.**,

*Plaintiff*,

*v.*

**THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A"**,

*Defendants*.
_______________________________________/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Koninklijke Philips's ("Plaintiff") Motion for Preliminary Injunction (the "Motion"). [ECF No. 17].[1] Plaintiff seeks a preliminary injunction against the individuals, partnerships, and unincorporated associations identified in Schedule A ("Defendants")[2] pursuant to Federal Rule of Civil Procedure 65, the Lanham Act, 15 U.S.C. § 1116, the U.S. Copyright Act, 17 U.S.C. §§ 106, 501, *et seq.*, and the All Writs Act, 28 U.S.C. § 1651(a). *Id.* at 1. For the reasons below, we respectfully recommend that the Motion be **GRANTED**.

### FACTS

Plaintiff owns the federally registered trademarks identified in Schedule B (the "Philips Marks"), [ECF No. 17-2 at 9–11], and has expended substantial time, money, and other resources developing and promoting the Philips Marks. *Id.* ¶¶ 3, 10.

---

[1] The Honorable Roy K. Altman referred the preliminary injunction portion of the Motion to us for a hearing. [ECF No. 25 at 9–10].

[2] Plaintiff attached Schedule A to the Motion. *See* [ECF No. 17-1].

Through the various Internet-based e-commerce stores operating under the seller identities identified on Schedule A, Defendants have advertised, promoted, offered for sale, or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Philips Marks. [ECF No. 17-2 ¶ 12; ECF No. 17-3 ¶ 4]. Defendants are not now, nor have they ever been, authorized to use the Philips Marks for any purpose. [ECF No. 17-2 ¶ 12]. Plaintiff claims it is suffering irreparable harm due to the infringing sales, *id.* ¶¶ 16–24, particularly where Defendants' goods, which bear the infringing Philips Marks, are "indistinguishable to consumers, both at the point of sale and post-sale." [ECF No. 17 at 5].

Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded products by the Defendants. [ECF No. 17-2 ¶¶ 12–15]. Plaintiff accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated orders from them to purchase products bearing counterfeit copies and infringements of Plaintiff's Philips Marks, and requested each product to be shipped to an address in the Southern District of Florida. *See id.*; [ECF No. 17-3 ¶ 5]. Plaintiff conducted a review and visually inspected the Defendants' goods and determined the products were nongenuine, unauthorized versions of the Plaintiff's products bearing the Philips Marks. [ECF No. 17-2 ¶ 15].

Based on its investigation, Plaintiff filed a Complaint, [ECF No. 1], which it twice amended. [ECF Nos. 5 & 16]. The Second Amended Complaint asserts a claim of trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); a false designation of origin claim under § 43(A) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); and common law claims for unfair competition (Count III) and trademark infringement (Count IV). [ECF No. 16 ¶¶ 42–66].

Plaintiff then filed an *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, [ECF No. 7], which the Court denied, [ECF No. 10]. Plaintiff renewed its request in the present Motion, which sought both a temporary restraining order ("TRO") and a preliminary injunction. [ECF No. 17]. The Court granted

the TRO request, [ECF No. 25], and referred the matter to us for a preliminary injunction hearing, *id.* at 9–10.

We set the preliminary injunction hearing for August 6, 2026. [ECF No. 27]. Plaintiff served Defendants with a copy of the Complaint, the Motion, the TRO Order, and all filings in this matter, including our Order setting the preliminary injunction hearing. *See* [ECF No. 31].

The Court held the hearing on August 6 as scheduled. [ECF No. 35]. Plaintiff's counsel appeared and presented oral argument on the matters raised in the Motion, directing the Court to the supporting evidence in the record. *See id.* Despite having notice of the hearing, Defendants have not responded to the Motion, filed anything on the docket, or otherwise appeared in this matter, either personally or through counsel. Moreover, the Court delayed the start of the hearing by fifteen minutes to permit any latecomer Defendants to appear and none showed. Nor does the record reflect any request for an extension of time to respond to the Motion or to continue the preliminary injunction hearing. *See generally* Docket. The Motion is therefore ripe for review.

## LAW

The Federal Rules of Civil Procedure authorize courts to issue preliminary injunctions. *See* Fed. R. Civ. P. 65(a). To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Before a court may issue a preliminary injunction, notice must be provided to the adverse party. *See* Fed. R. Civ. P. 65(a).

"To prevail on a trademark infringement claim under 15 U.S.C. § 1114, the plaintiff must show that it owns a valid trademark, that its mark has priority, that the defendant used such mark in commerce without the plaintiff's consent, and that the defendant's use is likely to cause consumer

confusion as to the source, affiliation or sponsorship of its goods or services." *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1264–65 (S.D. Fla. 1999). "[A] sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of a substantial threat of irreparable harm." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 191 (11th Cir. 2005) (alterations adopted) (citation omitted).

"To state a claim for unfair competition and false designation of origin, a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two," *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1355–56 (S.D. Fla. 2012) (internal quotation marks omitted), which are the same elements required "to prevail on [a] federal claim of trademark infringement," *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012). *Cf. Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1262 (S.D. Fla. 2019) (explaining that the "test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim — i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue").

Under 15 U.S.C. § 1117(a), a party may be entitled to recover, as an equitable remedy, illegal profits gained through another party's distribution and sale of products bearing counterfeit marks or infringing upon trademarks. *See Levi Strauss & Co.*, 51 F.3d at 987. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Id.*

## ANALYSIS

Plaintiff here has met all four factors for preliminary injunctive relief. Specifically, Plaintiff shows a substantial likelihood of success on the merits of its claims, that it will suffer irreparable injury in an injunction is not granted, that the threatened injury outweighs the harm the relief would inflict

on Defendants, and that the entry of an injunction would serve the public interest. *See Schiavo*, 403 F.3d at 1225–26.

Turning first to the success prong, to succeed in its trademark infringement claim, Plaintiff must show it owns a valid trademark, that its mark has priority, that Defendants "used such mark in commerce" without Plaintiff's consent, and that Defendants' use is "likely to cause consumer confusion as to the source, affiliation, or sponsorship of its goods or services." *Carnival Corp.*, 74 F. Supp. 2d at 1264–65. Plaintiff has established that it owns the Philips Marks and that the Philips Marks have priority. [ECF No. 17-2 ¶¶ 3–5]. And Defendants do not have authorization to use Plaintiff's trademarks. *Id.* ¶ 12.

Considering the allegations in the Second Amended Complaint and the supporting evidence, we find that Plaintiff has a strong probability of proving at trial that the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear and use copies of the Philips Marks. Plaintiff likewise has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisements, promotions, sales, offers for sale, or distribution of goods bearing and using counterfeits, reproductions, or colorable imitations of the Philips Marks. *See generally* [ECF Nos. 17-2 & 17-3]. Specifically, Plaintiff submitted screenshots of the products advertised by Defendants, which bear the Philips Marks, and investigated those advertisements. *See* [ECF 17-4]. The team analyzing the advertised products concluded they were not genuine based on factors such as price and "certain product and marking characteristics," which they found to be "[in]consistent with genuine Philips products." [ECF No. 17-2 ¶ 15]. Because it can prove all the elements of its trademark infringement and counterfeiting claims, Plaintiff is therefore likely to prevail on its claims at trial. *See Carnival Corp.*, 74 F. Supp. 2d at 1264–65; *Brain Pharma, LLC*, 858 F. Supp. 2d at 1355–56; *Suntree Techs*, 693 F.3d at 1346; *Chanel, Inc.*, 362 F. Supp. 3d at 1262–63; *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001); *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003).

Second, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. As noted above, a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of a substantial threat of irreparable harm. *See Ferrellgas Partners*, 143 F. App'x at 191. Based on the evidence in this case, there is a strong likelihood of confusion caused by Defendants' alleged trademark infringement. Specifically, Defendants are advertising, offering for sale, and selling goods bearing unauthorized copies of Plaintiff's trademarks. [ECF No. 17-4]. Consumers may therefore believe these products are being sold by Plaintiff, or that Plaintiff has otherwise authorized their sale. And Plaintiff reasonably fears that "[i]nferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Philips Products, resulting in a loss or undermining of Philips' reputation and goodwill." [ECF No. 17-2 ¶ 23]. Moreover, as the Eleventh Circuit has explained, "[i]t is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm." *See Ferrellgas Partners*, 143 F. App'x at 191.

Third, the threatened injury to Plaintiff outweighs the potential harm to Defendants. Plaintiff has expended substantial time, money, and resources to develop the alleged quality, reputation, and goodwill associated with its trademarks. [ECF No. 17-2 ¶ 10]. Defendants, on the other hand, suffer no legitimate hardship because Defendants are not authorized to engage in their allegedly infringing activities. *Id.* ¶ 12. Therefore, the potential harm to Plaintiff's reputation and goodwill outweighs the potential harm to Defendants of restraining Defendants' trade in counterfeit goods bearing unauthorized copies of Plaintiff's trademark.

Fourth, the public has an interest in not being misled about the origin, source, or sponsorship of trademarked products. *See Nailtiques Cosm. Corp. v. Salon Scis., Corp.*, No. 96-2709-CIV-NESBITT, 1997 WL 244746, at *5 (S.D. Fla. Jan. 10, 1997); *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 1:16-CV-20683, 2017 WL 2895921, at *9 (S.D. Fla. Apr. 13, 2017), *report and recommendation adopted*, No. 16-20683-CIV, 2017 WL 2901203 (S.D. Fla. May 26, 2017). Accordingly, the public interest favors

granting the preliminary injunction, which will protect Plaintiff's trademark interests and the public from the unwitting purchase of counterfeit goods.

Finally, § 1117(a) allows the Court to award to Plaintiff illegal profits gained through Defendants' distribution and sale of products bearing counterfeits or infringing upon Plaintiff's trademarks. *See Levi Strauss & Co.*, 51 F.3d at 987. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Id.* Given the inherently deceptive nature of the counterfeiting business and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained. And asset restraints can be particularly important where counterfeiters conduct their business entirely online and may be practically able to thwart adequate relief by transferring assets out of the reach of a plaintiff. *See* [ECF No. 17-2 ¶ 20; ECF No. 17-3 ¶ 7]. Accordingly, there is good reason to believe Defendants will hide or transfer their allegedly ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

* * *

For the foregoing reasons, we respectfully **RECOMMEND** that Plaintiff's Motion, [ECF No. 17], be **GRANTED** under the following terms:

1. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are restrained and enjoined until further order from this Court as follows:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Philips Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff; and

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Philips Marks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Philips Marks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants.

2. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the unauthorized use of the Philips Marks on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

3. Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

4. Upon receipt of notice of this Order, the Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who are providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall after receipt of notice of this Order, restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants'

respective financial accounts, and restrain any other financial accounts tied thereto. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

5. Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

6. This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Philips Marks at issue in this action and/or unfairly competing with Plaintiff.

7. This Order shall remain in effect during the pendency of this action, or until such further dates as set by the Court or stipulated to by the parties.

8. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiff shall maintain its previously posted bond in the amount of Five Thousand Dollars and Zero Cents ($5,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.

Pursuant to Local Magistrate Rule 4(b), the parties will have **14 days** from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** in the Southern District of Florida on August 7, 2026.

YENEY HERNANDEZ
UNITED STATES MAGISTRATE JUDGE

cc: counsel of record